UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

PHILLIP ZARAGOZA, MICHAEL )
FRANCO, and PETER KRUSE, )
　　　　　　　　　　　　　　　 )
　　　　　　Plaintiffs, )　　　　　2:11-CV-01091-PMP-GWF
　　　　　　　　　　　　　　　 )
v. )
　　　　　　　　　　　　　　　 )
JUDGE KAREN P. BENNETT-HARON; )　　　ORDER
CORONER P. MICHAEL MURPHY; and )
CHIEF DEPUTY DISTRICT ATTORNEY )
CHRISTOPHER J. LAURENT, )
　　　　　　　　　　　　　　　 )
　　　　　　Defendants. )
_____ )

Presently before the Court is Respondents Karen P. Bennett-Haron, P. Michael Murphy, and Christopher J. Laurent's Motion to Dismiss (Doc. #11), filed on July 22, 2011. Petitioners Phillip Zaragoza, Michael Franco, and Peter Kruse filed an Opposition (Doc. #18) on August 15, 2011. Respondents filed a Reply (Doc. #19) on August 19, 2011.

Also before the Court is Petitioners' Motion to Remand for Lack of Federal Jurisdiction or Under Pullman Abstention (Doc. #12), filed on July 23, 2011. Respondents filed an Opposition (Doc. #17) on August 9, 2011. Petitioners filed a Reply (Doc. #19) on August 19, 2011.

Also before the Court is non-party American Civil Liberties Union of Nevada's ("ACLU") Motion to Intervene Pursuant to FRCP 24(a)(2) (Doc. #20), filed on August 26, 2011. Petitioners filed an Opposition (Doc. #23) on September 12, 2011. ACLU filed a Reply (Doc. #24) on September 22, 2011.

///

1   This matter was reassigned to the undersigned on October 27, 2011.  (Min. Order
2   (Doc. #26).)  The Court held a hearing on these motions on November 30, 2011.  (Mins. of
3   Proceedings (Doc. #32).)

4   **I. BACKGROUND**

5   This case presents a challenge to Clark County, Nevada's recently enacted
6   ordinance establishing new procedures in coroner's inquests involving police officer
7   involved deaths.  The case originally was filed in Nevada state court by Petitioners Phillip
8   Zaragoza, Michael Franco, and Pete Kruse.  (Pet. for Removal (Doc. #1), Ex. 1.)
9   Petitioners are Las Vegas Metropolitan Police Department officers who were involved in
10  the shooting death of Benjamin Bowman and are among the first officers who would be
11  subject to the new inquest procedures.  (Id.)  Petitioners brought a Petition in state court
12  seeking a writ of mandamus or a writ of prohibition against Respondents, who are the
13  presiding officer of the inquest, Justice of the Peace Karen P. Bennett-Haron; Coroner P.
14  Michael Murphy; and Chief Deputy District Attorney Christopher J. Laurent, to prohibit
15  these officials from utilizing the new inquest procedures with respect to Petitioners.
16  Petitioners contend the new inquest ordinance violates due process under the U.S. and
17  Nevada Constitutions, violates equal protection under the U.S. and Nevada Constitutions, is
18  void for vagueness under the U.S. and Nevada Constitutions, and violates the Nevada
19  Constitution's separation of powers clause.  Respondents removed the action to this Court
20  based on federal question jurisdiction.  (Pet. for Removal.)

21  Petitioners now move to remand, arguing this Court lacks subject matter
22  jurisdiction and, even if the Court has jurisdiction, the Court ought to abstain under
23  Railroad Commission v. Pullman Co., 312 U.S. 496 (1941).  Respondents oppose, arguing
24  the Court has subject matter jurisdiction because the Petition asserts claims arising under
25  the U.S. Constitution.  Respondents also contend Pullman abstention is inappropriate
26  because the state law claims mirror their federal counterparts.

Respondents move to dismiss the Petition, arguing the ordinance does not violate the due process or equal protection clauses of the U.S. and Nevada Constitutions, is not void for vagueness, and does not violate the Nevada Constitution's separation of powers clause. Petitioners oppose, arguing the ordinance deprives them of their due process rights, distinguishes between police officers and citizens and imposes burdens on officers' fundamental rights, provides for arbitrary enforcement, and violates the separation of powers clause.

Finally, ACLU moves to intervene in this action. Petitioners oppose intervention.

**II.  MOTION TO REMAND (Doc. #12)**

Petitioners move to remand this case to state court, arguing no federal question jurisdiction exists to support removal because Petitioners seek a writ of mandamus and a writ of prohibition, both creations of state law. Petitioners also argue that because they assert independent state law theories to support their claims, their claims do not depend on a construction of federal law. Petitioners also argue that even if federal question jurisdiction exists, the Court should abstain under Pullman because this case raises substantial questions of state law, the Court may avoid deciding constitutional questions because resolution of the state law questions may moot the federal constitutional questions, and resolution of the state law questions is uncertain.

Respondents oppose remand, arguing that because the Petition raises due process and equal protection claims under the U.S. Constitution, federal question jurisdiction exists. Respondents also contend that the Court should not abstain under Pullman for the purpose of allowing the state court to interpret state constitutional provisions that parallel federal constitutional provisions. Respondents contend that Nevada's due process, equal protection, and separation of powers constitutional provisions mirror their federal counterparts, and the Court therefore should not abstain.

///

1    Petitioners reply that while Respondents attempt to re-cast their Petition into

2  seven claims for relief, three federal and four state, that is not how Petitioners pled their

3  Petition as masters of their pleading.  Rather, Petitioners contend they pled only two state

4  law claims for a writ of prohibition and a writ of mandamus, and these claims arise only

5  under Nevada state law.  Petitioners also argue that because Respondents move to dismiss

6  on the basis that Petitioners lack standing, there is no jurisdiction in this Court.  Finally,

7  Petitioners argue <u>Pullman</u> abstention is appropriate because there is no federal counterpart

8  to Nevada's explicit constitutional provision that prohibits one branch of government from

9  impinging on the functions of another.

10    **A.  Subject Matter Jurisdiction**

11    If the Court lacks subject matter jurisdiction, the Court must remand a removed

12  action to state court.  28 U.S.C. § 1447(c).  The Court has original federal question

13  jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

14  United States."  28 U.S.C. § 1331.  To remove based on federal question jurisdiction, the

15  federal question must be an essential element of the plaintiff's cause of action.  <u>Gully v.</u>

16  <u>First Nat'l Bank</u>, 299 U.S. 109, 112 (1936).  The presence or absence of a federal question

17  is determined by the well-pleaded complaint rule.  <u>Caterpillar Inc. v. Williams</u>, 482 U.S.

18  386, 392 (1987).  Under the well-pleaded complaint rule, the plaintiff is the master of his or

19  her complaint, and a plaintiff may defeat removal by choosing not to plead independent

20  federal claims.  <u>ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality</u>, 213

21  F.3d 1108, 1114 (9th Cir. 2000).  This does not mean, however, that a plaintiff may defeat

22  removal by "omitting to plead necessary federal questions in a complaint."  <u>Id.</u> (quotation

23  omitted).  If a federal question is an essential element of the relief sought, a plaintiff may

24  not avoid federal jurisdiction by choosing to ignore the federal question in the complaint.

25  <u>Id.</u>  A state-created cause of action arises under federal law:  "(1) where federal law

26  completely preempts state law; (2) where a claim is necessarily federal in character; or (3)

where the right to relief depends on the resolution of a substantial, disputed federal question."  Id. (internal citations omitted).

The Petition here seeks relief under two Nevada statutes which grant authority to certain Nevada state judicial bodies and officers to issue a writ of prohibition and writ of mandamus.  Specifically, the mandamus statute, Nevada Revised Statutes section 34.160, provides that the Supreme Court, a district court, or a district court judge may issue a writ to "compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station."  The prohibition statute, section 34.330, grants the Supreme Court or a district court the power to issue a writ of prohibition under section 34.320 to an inferior tribunal to "arrest[] the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of such tribunal . . . ."

Petitioners contend they assert two causes of action: one for a writ of prohibition and one for a writ of mandamus.  However, under Nevada law, writs of prohibition and mandamus are remedies, not causes of action.  See, e.g., State v. Eighth Jud. Dist. Ct., 42 P.3d 233, 237 (Nev. 2002) (referring to writ relief as an "extraordinary remedy"); Mineral Cnty. v. State, Dep't of Conservation & Natural Res., 20 P.3d 800, 805 (Nev. 2001) (same); Scrimer v. Eighth Jud. Dist. Ct., 998 P.2d 1190, 1193 (Nev. 2000) (same); Kussman v. Eighth Jud. Dist. Ct., 612 P.2d 679, 679 (Nev. 1980) (same).  Petitioners rely on cases that refer to the writs as "claims" or "causes of action," but none of those cases are Nevada cases, and Nevada has stated on multiple occasions that the writs are remedies.  In any event, the language in the cases upon which Petitioners rely reflects how courts may refer to claims for a certain remedy, like a punitive damages "claim" even though punitive damages is a remedy not a claim.

The properly pled Petition asserts seven claims, not two, all of which seek as a remedy either a writ of prohibition or mandamus.  Three of those claims arise under the U.S. Constitution, where Petitioners allege the inquest ordinance violates the U.S.

1   Constitution's due process and equal protection clauses.  Three of the Petition's claims

2   therefore "arise under" federal law supporting removal, and the Court has remedial powers

3   comparable to Petitioners' requested relief, including declaratory and injunctive relief, to

4   effectuate any judgment it renders in this action.  This Court will deny the motion to remand

5   for lack of subject matter jurisdiction.

6   **B.  Standing**

7   Petitioners' argue the Court should remand because in Respondents'

8   separately-filed motion to dismiss, Respondents argue Petitioners lack standing.  At the

9   hearing in this matter, Respondents withdrew their standing argument.  However, the Court

10   has an independent duty to ensure its own jurisdiction, including standing.  FW/PBS, Inc. v.

11   City of Dallas, 493 U.S. 215, 231 (1990).

12   Petitioners are making a facial attack on the ordinance and the new inquest

13   procedures already have begun or are threatening to begin against them.  The inquest

14   hearing was scheduled for July 2011, but was halted pending resolution of this federal case.

15   Petitioners already have been subjected to the new procedures because an ombudsman for

16   the deceased's family has been appointed and the ombudsman has participated in

17   pre-hearing conferences and motion practice.  Petitioners' injury in the context of a facial

18   attack on the ordinance therefore is not speculative, hypothetical, or unripe; is fairly

19   traceable to Respondents' conduct given Respondents' role in the inquest process; and is

20   redressable by this Court through declaratory and injunctive relief.  See Friends of the

21   Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).  Petitioners

22   therefore have standing.

23   **C.  Pullman Abstention**

24   Petitioners argue that even if this Court has jurisdiction, it should abstain under

25   Pullman and either dismiss entirely, or sever and remand the state law claims and stay the

26   federal claims pending resolution by the state court.  Petitioners argue that given the local

importance and novelty of the issues and a means to avoid deciding federal constitutional questions which may be unnecessary, the Court should abstain.  Respondents argue that Pullman abstention is inappropriate because Pullman abstention should apply only where the state will interpret a provision of its own constitution which has no federal counterpart.  Respondents argue Petitioners' due process, equal protection, and separation of powers state law claims are based on state constitutional provisions which have federal counterparts.

Pullman abstention "is a narrow exception to the district court's duty to decide cases properly before it."  Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 801 (9th Cir. 2001) (quotation omitted).  A district court may abstain "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."  Id. (quotation omitted).  The policy considerations behind Pullman abstention are avoiding unnecessary adjudication of federal constitutional questions and serving state comity considerations.  Id. at 801-02.  Pullman thus reflects "an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions."  Spoklie v. Montana, 411 F.3d 1051, 1055 (9th Cir. 2005) (quotation omitted).

The Court applies a three-part test to determine whether to abstain under Pullman.  "First, the case must touch on a sensitive area of social policy upon which federal courts ought not to enter unless no alternative to its adjudication is open."  Columbia Basin, 268 F.3d at 802.  "Second, it must be plain that the constitutional adjudication can be avoided if a definite ruling on the state issue would terminate the controversy."  Id. "Finally, the possible determinative issue of state law must be uncertain."  Id.

Pullman abstention is "particularly appropriate" when the state law question at issue "implicates a state constitutional provision that differs significantly" from its federal counterpart.  Id. at 806; see also Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 237 n.4 (1984)

("The Court has previously determined that abstention is not required for interpretation of parallel state constitutional provisions."). However, the Court need not remand if doing so "would simply impose expense and long delay upon the litigants without hope of its bearing fruit." Potrero Hills Landfill, Inc. v. Cty. of Solano, 657 F.3d 876, 889-90 (9th Cir. 2011) (quotation omitted).

Pullman abstention is not a jurisdictional question; rather, whether to abstain lies within the district court's discretion. Smelt v. Cnty. of Orange, 447 F.3d 673, 679 (9th Cir. 2006). If the Court abstains under Pullman, the proper course is to retain jurisdiction but stay the action pending resolution of the state law questions in state court, rather than dismissing the case entirely. Columbia Basin, 268 F.3d at 802, 807.

Here, the first Pullman factor favors abstention. A community's relationship with its police force and its determination of how unnatural deaths ought to be investigated are matters of local concern. The subject of officer involved deaths in Las Vegas and the subsequent coroner's inquests have been the subject of significant controversy in the local community, and how to respond to that controversy is an area of sensitive local social policy.

The second factor also favors abstention because the Court can avoid deciding the federal constitutional questions by obtaining a definitive ruling on the state issues. If the Nevada courts strike the ordinance on any of the state constitutional grounds, the Court will not have to address the federal constitutional claims.

The third factor also supports abstention, as the possible determinative issue of state law is uncertain. Because the inquest ordinance is newly enacted, the Nevada state courts have had little opportunity to construe it first. There is currently one state court ruling addressing the ordinance, but it is unclear how the Nevada Supreme Court would resolve the challenges to the ordinance which Petitioners raise in this action.

///

However, <u>Pullman</u> abstention generally is not appropriate if the state constitutional provision is a mirror image of a federal constitutional provision.  Nevada's equal protection and due process clauses mirror their federal counterparts, and Nevada looks to federal authority for guidance on these provisions.  <u>In re Candelaria</u>, 245 P.3d 518, 523 (Nev. 2010) ("The standard for testing the validity of legislation under the equal protection clause of the state constitution is the same as the federal standard." (quotation omitted)); <u>Reinkemeyer v. Safeco Ins. Co. of Am.</u>, 16 P.3d 1069, 1072 (Nev. 2001) (stating the Nevada Constitution's due process clause uses "virtually mirror" language to the U.S. Constitution and Nevada therefore "look[s] to federal caselaw for guidance").  However, the U.S. Constitution does not contain an explicit separation of powers clause.  Rather, the federal separation of powers doctrine is based on the structure of the three branches of government within Articles I, II, and III.  <u>Crater v. Galaza</u>, 508 F.3d 1261, 1263 (9th Cir. 2007).  The Nevada Constitution contains the same structural separation of powers in Articles 4, 5, and 6.  <u>Comm'n on Ethics v. Hardy</u>, 212 P.3d 1098, 1103 (Nev. 2009).  But the Nevada Constitution goes further and contains an explicit separation of powers clause:

> The powers of the Government of the State of Nevada shall be divided into three separate departments,--the Legislative,--the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.

Nev. Const. art. 3, § 1.  The Nevada Supreme Court has characterized its constitutional separation of powers as "probably the most important single principle of government." <u>Comm'n on Ethics</u>, 212 P.3d at 1108 (quotation omitted).

Nevada's separation of powers clause has no federal counterpart.  While the U.S. Constitution structurally incorporates separation of powers, it has no explicit textual provision like the Nevada Constitution which directs that persons in one branch may not exercise the powers belonging to another branch.  Nevada has not indicated that its

separation of powers clause is the mirror image of the U.S. Constitution's separation of powers achieved only through structure.  Nevada also has not stated it will look to federal law for guidance on separation of powers questions.  Nor has it done so regularly in practice.  See, e.g., Stromberg v. Second Jud. Dist. Ct., 200 P.3d 509, 512-13 (Nev. 2009) (looking to California law); Blackjack Bonding v. City of Las Vegas Mun. Ct., 14 P.3d 1275, 1279-80 (Nev. 2000) (citing Nevada and other state law); City of N. Las Vegas v. Daines, 550 P.2d 399, 400 (Nev. 1976) (same); Galloway v. Truesdell, 422 P.2d 237, 242-47 (Nev. 1967) (same); but see Comm'n on Ethics, 212 P.3d at 1103-09 (relying on both state and federal law); Guinn v. Legislature of State of Nev., 76 P.3d 22, 30 (Nev. 2003) (citing federal law).  Consequently, Pullman abstention is particularly appropriate with respect to the separation of powers claim.

While Pullman abstention is particularly appropriate with respect to the separation of powers claim, it is not favored for the due process and equal protection claims.  Therefore, the Court, in its discretion, will keep and decide the equal protection and due process claims under both the U.S. and Nevada Constitutions.  Because, as discussed below, the Court will grant Respondents' motion to dismiss those claims, the Court will sever and remand the separation of powers claim and decline to exercise supplemental authority over that remaining state law claim.  See 28 U.S.C. § 1367(c)(1), (c)(3).  The Court rejects Respondents' implication at the hearing that the state court is not suited to hear this case.  The Nevada state courts are entirely capable of fairly resolving Nevada constitutional questions, and indeed, those courts are especially suited to do so.  The Court therefore will sever and remand the separation of powers claim.

## III.  MOTION TO DISMISS (Doc. #11)

Respondents move to dismiss, arguing that as a matter of law, the ordinance survives facial attacks under the due process and equal protection clauses of the U.S. and Nevada Constitutions, and under the separation of powers clause of the Nevada

Constitution.  Petitioners oppose dismissal.

Petitioners' attack on the ordinance is a facial attack which seeks to declare the entire ordinance unconstitutional.[1]  The Court starts with the presumption that the ordinance is constitutional.  SeaRiver Maritime Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 669 (9th Cir. 2002).  A party making a facial challenge to an ordinance must meet a "high burden of proof."  S.D. Myers, Inc. v. City & Cnty. of S.F., 253 F.3d 461, 467 (9th Cir. 2001).  The party must establish there is "no set of circumstances" under which the ordinance would be valid.  Id. (quotation omitted).  The ordinance is not wholly invalid even if it "might operate unconstitutionally under some conceivable set of circumstances."  Id. (quotation omitted).  Should such circumstances arise, the aggrieved party then could mount an as-applied challenge to the ordinance.  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998).  "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort."  Gospel Missions of Am. v. City of L.A., 419 F.3d 1042, 1047 (9th Cir. 2005) (quotation omitted).

**A. Due Process**

Respondents argue the Court should dismiss the due process claims because the due process clause is not implicated by the inquest ordinance.  Respondents contend that because the inquest ordinance does not make any ultimate finding of guilt or impose any penalty, it does not deprive anyone of life, liberty, or property to trigger application of the due process clause.  Respondents also argue that hypothetical harm to Petitioners' reputation does not amount to a due process violation, both because it is hypothetical and because reputation is not life, liberty, or property protected by the due process clause.

///

---

[1] At the hearing, Petitioners argued they are mounting an as applied challenge, but Petitioners have not identified anything that has happened in the proceedings so far that has denied them of any due process or equal protection rights beyond the asserted facial deficiencies in the ordinance.

Petitioners respond that because the inquest process is akin to a criminal adjudication and has the power to brand Petitioners as criminals, the due process clause is implicated. Petitioners argue that through the interrogatories presented to the inquest jury, the inquest will find the factual predicate for a criminal adjudication.

The Fourteenth Amendment's procedural due process clause applies only when a constitutionally protected liberty or property interest is imperiled. Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Consequently, a plaintiff must show deprivation of a liberty or property interest protected by the Constitution to state a due process claim. Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 62 (9th Cir. 1994).

The parties dispute which of two U.S. Supreme Court cases govern this dispute, Hannah v. Larche, 363 U.S. 420 (1960) or Jenkins v. McKeithen, 395 U.S. 411 (1969). In Hannah, certain individuals involved in running local elections challenged subpoenas to appear at a hearing before the Commission on Civil Rights regarding alleged voting rights violations. 363 U.S. at 421-22. The Commission was acting pursuant to a "statutory mandate to investigate allegations in writing under oath or affirmation that certain citizens of the United States are being deprived of their right to vote and have that vote counted by reason of their color, race, religion, or national origin." Id. at 423 (quotation omitted). The Supreme Court concluded that no due process rights were implicated because the Commission's--

> function is purely investigative and fact-finding. It does not adjudicate. It does not hold trials or determine anyone's civil or criminal liability. It does not issue orders. Nor does it indict, punish, or impose any legal sanctions. It does not make determinations depriving anyone of his life, liberty, or property. In short, the Commission does not and cannot take any affirmative action which will affect an individual's legal rights. The only purpose of its existence is to find facts which may subsequently be used as the basis for legislative or executive action.

Id. at 441. Hannah set forth the general principles that "when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of

individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process." Id. at 442.  However, "when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." Id.  The Supreme Court specifically rejected the proposition that collateral consequences, such as the objects of the investigation being subjected to "public opprobrium and scorn," or the possibility they might lose their jobs or face criminal prosecution, would trigger procedural due process protections. Id. at 442-43.  Rather, those individuals would be entitled to the full panoply of procedural protections if and when any adjudicatory proceeding was initiated. Id. at 446.

Several years later, the Supreme Court addressed whether subjects of an investigation by a special body created by Louisiana statute, the Labor-Management Commission of Inquiry, were entitled to procedural due process protections.  In Jenkins, the Commission was created by Louisiana statute with the specific purpose of investigating and finding facts "relating to violations or possible violations of criminal laws of the state of Louisiana or of the United States arising out of or in connection with matters in the field of labor-management relations."  395 U.S. at 414 (quotation omitted).  The Commission could act only upon referral from the Governor when, in his opinion, there was or could be criminal law violations affecting labor-management relations. Id. at 415.  The Commission then would hold public hearings to determine the facts relating to the alleged criminal violations. Id.  The Commission had to make public findings regarding whether probable cause existed to believe criminal violations occurred. Id. at 416.  It had no power to adjudicate criminal violations, but it could make findings with respect to specific individuals and make recommendations to the Governor. Id. at 416-17.  The Commission was required to refer the matter to state or federal authorities if it found probable cause a criminal violation had occurred. Id.

The Supreme Court concluded that under these circumstances, Hannah did not control.  Id. at 425.  The Supreme Court acknowledged that the Commission did not, strictly speaking, adjudicate rights, but "the Commission exercises a function very much akin to making an official adjudication of criminal culpability."  Id. at 427.  Specifically, the Supreme Court noted that the Commission was limited to investigating criminal law violations, it was required to make specific findings of guilt, it was not an independent body of citizens, and it could not act without a referral from the Governor.  Id. at 428, 431.  The Supreme Court concluded the Commission therefore exercised "an accusatory function; it is empowered to be used and allegedly is used to find named individuals guilty of violating the criminal laws of Louisiana and the United States and to brand them as criminals in public."  Id. at 427-28.  The Supreme Court thus held that "where the Commission allegedly makes an actual finding that a specific individual is guilty of a crime, . . . due process requires the Commission to afford a person being investigated the right to confront and cross-examine the witnesses against him, subject only to traditional limitations on those rights."  Id. at 429.

Following Jenkins, the Courts of Appeals have reaffirmed the principle in Hannah that where a governmental body performs investigatory, rather than adjudicatory, functions, the procedural due process clause is not triggered.  See Trentadue v. Integrity Comm., 501 F.3d 1215, 1237 (10th Cir. 2007) (stating that "[w]hen agencies conduct 'nonadjudicative, fact-finding investigations, rights such as apprisal, confrontation, and cross-examination generally do not obtain.'" (quoting Hannah, 363 U.S. at 446)); Aponte v. Calderon, 284 F.3d 184, 193 (1st Cir. 2002) ("[I]t is clear that investigations conducted by administrative agencies, even when they may lead to criminal prosecutions, do not trigger due process rights.").

Here, the coroner's inquest is more like Hannah than Jenkins.  The inquest performs an investigatory function to inquire into the cause of death where a person has

died by unnatural means.  Clark County, Nev., Code § 2.12.080(a).  Although a prosecutor is assigned to the inquest, his or her duty is to "serve as a neutral presenter of facts.  In this role, the prosecutor shall not act as advocate for any of the interested parties."  Id. § 2.12.080(g).  The presiding officer "shall insure that the inquest is conducted as an investigatory and fact finding proceeding and not an adversarial proceeding."  Id. § 2.12.080(m).  The interrogatories presented to the inquest jury "shall deal only with questions of fact and shall not deal with questions of fault or guilt."  Id. §§ 2.12.080(m)(7), 2.12.140(a).  The panel's findings are not binding on the district attorney's office and they have no "preclusive effect on any future civil or criminal proceedings."  Id. § 2.12.140(a).

The inquest is designed to be an investigatory body, not an adjudicatory or accusatory body.  It does not adjudicate any legal rights.  It does not recommend any particular action to any other entity, including the district attorney's office.  Whether to initiate criminal charges following an inquest remains solely within the discretion of the prosecuting authorities.  The fact that officers may face reputational harms, may suffer adverse employment actions, or may become the subject of a future civil or criminal proceeding are speculative collateral consequences that do not trigger due process guarantees.  Any officers who face criminal prosecution or a civil suit will be entitled to the full panoply of due process protections in those proceedings, including any challenge that they cannot obtain a fair trial due to pre-trial publicity occasioned by the fact that the inquest is aired on television.  See id. § 2.12.080(k) (requiring officer involved inquests to be aired on the county's government access television channel).  Because the inquest does not adjudicate any legal rights, the due process clause is not triggered, and Petitioners fail to state a due process claim under either the U.S. or Nevada Constitutions.

Moreover, the harms Petitioners identify are purely speculative.  Petitioners contend the inquest will result in factual interrogatories laying the predicate for criminal charges, such as second degree murder.  However, the interrogatories Petitioners present are

hypothetical interrogatories and thus it is speculation whether any inquest proceeding will ask the questions in the manner Petitioners present. Petitioners also contend they will suffer harm to their reputations and suffer collateral consequences such as adverse employment actions, but that assumes the inquest process will result in a suggestion that they may have engaged in wrongdoing. Even if that is true for some officers, it surely is not the case in all circumstances, and therefore the ordinance survives a facial attack. And because Petitioners do not allege they in fact have suffered any such harms, an as applied challenge is not ripe.

The officers also speculate that they may be held in contempt if they invoke their Fifth Amendment right not to testify at the inquest, but that has not happened nor is it certain to occur. The officers contend that they may be limited to a single attorney representing them at the inquest even if there are multiple officers involved and sometimes the officers will have competing interests. The ordinance provides that the officers be represented by one attorney "unless the presiding officer determines otherwise." Id. § 2.12.080(h)(2). Thus, if such a situation arose, the presiding officer could determine that a single attorney representative would be inadequate. The fact that in some circumstances a single attorney representative would be inadequate does not support facial invalidity, and the ordinance permits the presiding officer discretion to address this scenario. Petitioners also do not have an as applied challenge on this basis. They have not alleged that they requested separate representation and were denied, and they admit that their interests currently are aligned such that a single attorney adequately may represent their interests. (Pet'rs' Mot. to Remand (Doc. #12), Ex. 1 at 23-24.) The Court therefore will dismiss the due process claims under the U.S. and Nevada Constitutions.

## B. Equal Protection

Pursuant to the equal protection clause, the government must treat all similarly situated persons alike. Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1047 (9th Cir.

2002).  The initial step in evaluating an equal protection claim is to identify the asserted classification of groups.  Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005).  "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified."  Id.  "[T]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."  Plyler v. Doe, 457 U.S. 202, 216 (1982) (quotation omitted).

Once the classification is identified, the Court then determines the proper level of scrutiny to apply.  Honolulu Weekly, Inc., 298 F.3d at 1047.  The Court applies strict scrutiny if the classification at issue "targets a suspect class or burdens the exercise of a fundamental right."  Id. (quotation omitted).  If the distinction is based on a semi-suspect classification, such as gender, the Court applies intermediate scrutiny.  Green v. City of Tucson, 340 F.3d 891, 896 (9th Cir. 2003).  If neither strict nor intermediate scrutiny applies, the Court reviews for a rational basis.  Id.

Petitioners' equal protection claim fails at the first step.  The classification at issue is between a death being investigated through the inquest process where a police officer is involved and where no officer is involved.  In this context, police officers and private citizens are not similarly situated.  Police officers are given extraordinary powers on behalf of the citizenry that private citizens do not have, particularly in the use of force.  As stated by the Supreme Court, police officers "are clothed with authority to exercise an almost infinite variety of discretionary powers.  The execution of the broad powers vested in them affects members of the public significantly and often in the most sensitive areas of daily life."  Foley v. Connelie, 435 U.S. 291, 297 (1978) (footnote omitted).  The public has special interests in ensuring police officer accountability, fostering a trust relationship between police officers and the community they serve, and providing a balanced and transparent investigative process in situations where the police department is called upon to investigate its own officers.  These concerns do not arise with respect to the average citizen.

Even if police officers and private citizens were similarly situated such that equal protection is triggered, only rational basis review applies.  Petitioners argue strict scrutiny applies because the ordinance burdens fundamental rights.  However, as discussed above, the ordinance does not burden due process rights.  Petitioners argue the ordinance burdens the fundamental rights "to cross examine witnesses, to present evidence, to be represented by counsel, to exercise the privilege against self-incrimination, and to be free from unwarranted prosecution."  (Opp'n to Mot. to Dismiss (Doc. #18) at 18.)  However, these rights apply only in the context of criminal proceedings.  U.S. Const. amend. V, VI.  The inquest process is not a criminal proceeding.  Consequently, these rights are not implicated by the inquest ordinance.

To the extent those rights are implicated, the ordinance does not burden those rights.  With respect to the rights to cross examine witnesses, present evidence, and be represented by counsel, the ordinance provides for the participation of the officers' counsel in the pre-hearing conferences to discuss the evidence and witness list, provides for compulsory process by the presiding officer, and provides that the officers' counsel may question witnesses at the hearing.  Clark County, Nev., Code § 2.12.080(h), (j), (m)(2).  As to the right against self-incrimination, as discussed above, it is not clear from the face of the ordinance that a Fifth Amendment challenge to a contempt ruling would not prevail.  Finally, with respect to the right to be free from unwarranted prosecution, the inquest is not a prosecution and does not necessarily compel a prosecution.  The inquest does not refer matters for prosecution and has no binding effect on any future proceeding.  Whether to prosecute remains solely within the discretion of prosecuting authorities.  Because the ordinance does not burden a fundamental right, rational basis review applies.

Under rational basis review, the county commission rationally could have concluded that because the citizenry vests substantial authority in its police officers, an open, transparent, and balanced inquest process would facilitate public confidence both in

the police and in the inquest process itself.  Moreover, the county commission rationally could have concluded that because police officers in essence investigate themselves in an officer involved death, and because the district attorney's office has either a real or perceived relationship with police officers that it does not have with the average citizen, different procedures are required to ensure both actual meaningful review of police conduct and to preserve the appearance of balanced, meaningful review.  The Court therefore will grant the motion to dismiss the equal protection claims under both the U.S. and Nevada Constitutions.

### C.  Void for Vagueness (Due Process)

Petitioners argue the ordinance is unconstitutionally vague because the presiding officer has unfettered discretion over various aspects of the proceeding, including the burden of proof and the number of votes required for valid findings.  Respondents argue that because the hearing does not result in the adjudication of any legal right, the due process clause does not apply.

"A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement."  Human Life of Wash. Inc. v. Brumsickle, 624 F.3d 990, 1019 (9th Cir. 2010) (quotation omitted).  However, the law does not require "perfect clarity." Id. (quotation omitted).  "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications."  Id. at 1021 (quotations omitted).

The ordinance is not unconstitutionally vague on its face.  First, the ordinance does not prohibit any conduct and therefore it is not unconstitutionally vague for failing to provide a reasonable opportunity to know what conduct is prohibited.  Further, while the ordinance leaves some matters to the discretion of the presiding officer, it is not so indefinite as to allow arbitrary and discriminatory enforcement in all of its applications.

Because the inquest process does not adjudicate any legal rights as discussed above, it is doubtful the ordinance allows for any "enforcement" at all, much less arbitrary or discriminatory enforcement. But to the extent that conducting the proceeding itself constitutes "enforcement," the ordinance is not so vague and indefinite as to be unconstitutional on a facial attack. The presiding officer is commanded to conduct the proceedings as a fact finding proceeding not as an adversarial proceeding, to limit collateral evidence, to present interrogatories that deal only with questions of fact not questions of fault or guilt, and to conduct a fair and just hearing.

Petitioners argue there are no limits on the presiding officer's selection of an ombudsman for the family of the deceased, and there are no standards on the burden of proof or how many votes constitute valid findings. However, neither of these challenges support a void for vagueness challenge. As to the identity of the appointed ombudsman, Petitioners fail to identify how that has any constitutional significance. Moreover, the ordinance provides that the presiding officer may appoint an ombudsman only from an ombudsperson group established by the board of county commissioners. Clark County, Nev. Code § 2.12.075(b). Consequently, it is not completely at the presiding officer's whim whom to appoint as ombudsperson. As to the standard of proof or voting protocols, because the inquest does not adjudicate any rights, Petitioners do not show how the burden of proof or voting has constitutional significance.

Petitioners rely on Fitzgerald v. Jordan to argue that where an enactment provides for arbitrary enforcement, it is unconstitutionally vague. In Fitzgerald, an Illinois statute permitted a court to deny bail to a criminal defendant for "compelling reasons" pending resolution of the State's appeal. 747 F.2d 1120, 1129 (7th Cir. 1984). The United States Court of Appeals for the Seventh Circuit upheld the statute against a void for vagueness facial attack, concluding that the statute provided for internal protections through the possibility of appeal and offered some guidance through use of a presumption against

denying bail.  Id. at 1129-31.  The Seventh Circuit also rejected the petitioner's as applied challenge, finding that compelling reasons existed to deny bail pending the State's appeal. Id. at 1132-33.

Fitzgerald does not alter the Court's analysis.  Unlike the inquest ordinance at issue here, the bail statute in Fitzgerald implicated a due process right–the right to liberty. Moreover, the ordinance, like the bail statute in Fitzgerald, provides some guidance to presiding officers on how to conduct the proceedings such that the ordinance is not vague in all its applications.  Finally, because Petitioners can identify no constitutionally significant harm that they actually have suffered as yet, there is no basis to find the ordinance unconstitutionally vague as applied.  The Court will deny the void for vagueness challenge under both the U.S. and Nevada Constitutions.

**IV.  ACLU's MOTION TO INTERVENE (Doc. #20)**

Because the Court is dismissing the due process and equal protection claims and remanding the separation of powers claim, there is nothing left in this Court in which the ACLU can intervene.  Accordingly, the Court will deny the ACLU's motion to intervene as moot, without prejudice to seek intervention in the remanded proceedings in state court.

**V.  CONCLUSION**

IT IS THEREFORE ORDERED that Respondents Karen P. Bennett-Haron, P. Michael Murphy, and Christopher J. Laurent's Motion to Dismiss (Doc. #11) is hereby GRANTED in part and DENIED in part.  The motion is granted as to the Petition's claims for due process, equal protection, and void for vagueness under the U.S. and Nevada Constitutions.  The motion is denied with respect to the separation of powers claim under the Nevada Constitution, without prejudice to renew in the remanded state court proceedings.

IT IS FURTHER ORDERED that Petitioners' Motion to Remand for Lack of Federal Jurisdiction or Under Pullman Abstention (Doc. #12) is hereby GRANTED to the

extent that Petitioners' separation of powers claim under the Nevada Constitution is hereby SEVERED and REMANDED to the Eighth Judicial District Court in and for the County of Clark, State of Nevada in Case No. A-11-643622-W.  Petitioners' Motion (Doc. #12) is hereby DENIED in all other respects.

IT IS FURTHER ORDERED that American Civil Liberties Union of Nevada's Motion to Intervene Pursuant to FRCP 24(a)(2) (Doc. #20) is hereby DENIED as moot, without prejudice to renew in the remanded state court proceedings.


DATED:  December 5, 2011

_____
PHILIP M. PRO
United States District Judge